Case 4:23-cv-00363   Document 86   Filed on 03/28/25 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 28, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KELLY ELAINE SLAYTON, SPN # 03078865, § § § Plaintiff, § § VS. § P. SPELLS, *et al.*, § § Defendants. § | CIVIL ACTION NO. 4:23-0363 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kelly Elaine Slayton, a pretrial detainee in the Harris County Jail, proceeds *pro se* and *in forma pauperis* in this civil rights suit. The defendants have moved for summary judgment (Dkt. 53; Dkt. 54; Dkt. 55; Dkt. 60) and Slayton has responded (Dkt. 57; Dkt. 62). The motions are ripe for decision. Having considered the pleadings, the motions and briefing, the applicable authorities, and all matters of record, the Court determines that summary judgment should be **granted** for the defendants. Additionally, the Court will **grant** Harris County's motion for leave to file excess pages (Dkt. 59), **deny** Slayton's motion for leave to amend her pleadings (Dkt. 62), and **deny** Slayton's motions for default judgment (Dkt. 74; Dkt. 76; Dkt. 78). The Court's reasons are explained below.

## I.   BACKGROUND

Slayton sues four defendants: Officer Brittney Spells, Sergeant Christopher Roach, Lieutenant Isaac Barnett, and Harris County (Dkt. 1 (complaint); Dkt. 15 (more definite

statement)).[1] The defendants answered Slayton's complaint (Dkt. 37; Dkt. 38; Dkt. 39; Dkt. 40) and now seek summary judgment. Slayton filed two documents that respond to the defendants' summary-judgment motions. In the first response, which she filed in several of her cases that were pending at the time, Slayton urged the Court to deny summary judgment but offered no substantive arguments (Dkt. 57).[2] The response was filed on March 5, 2024, one day after the individual defendants' motions and before Harris County filed its motion. In the second document, captioned as a motion for leave to amend, Slayton made multiple factual allegations, some of which are relevant to events underlying her claims in this suit (Dkt. 62). As stated below, the Court will deny Slayton leave to amend her pleadings but has considered all alleged facts in reaching the summary-judgment determinations in this opinion.

### A.     **Officer Spells**

Slayton alleges that Officer Spells strip-searched her in a public holding cell on or about June 12, 2022, after Slayton returned from a non-contact visit with an attorney (Dkt. 1, at 3-4; Dkt. 15, at 6-9). She claims that the search was degrading and that Spells conducted it in direct view of cameras, a male nurse, a male guard, and male inmates (*id.* at 8-9). Slayton also alleges approximately a year later, on June 10, 2023, Officer Spells

---

[1]    Slayton's complaint also named the Texas Commission on Jail Standards and "the Ed Garza family" as defendants. After Slayton filed her more definite statement, the Court dismissed all claims against these defendants (Dkt. 24).

[2]    During her detention at the Harris County Jail, Slayton has filed more than a dozen federal lawsuits against Harris County officials. She frequently captions her filings for multiple cases. *See*, *e.g.*, Dkt. 21; Dkt. 42; Dkt. 51; Dkt. 57; Dkt. 74.

struck her face and body, causing physical and emotional injury; removed her clothes; and left her naked for two days without a suicide blanket and within view of a male nurse (Dkt. 11; Dkt. 15, at 13). She claims that Spells retaliated against her because Slayton had filed grievances (*id*. at 15-18).

Officer Spells filed an affidavit that generally denies Slayton's allegations and describes the events of both dates (Dkt. 55-4). She avers that on June 12, 2022, she strip-searched Slayton in the fourth-floor elevator lobby after a non-contact attorney visit because Slayton's attorney "made a comment alluding to" information that Slayton "may have had contraband on her person" (*id*. at 2). Officer Spells states that no males were present during the search; that she did not assault or physically touch Slayton; and that the search accorded with county policy (*id*.). Regarding the events of June 10, 2023, Officer Spells states that Slayton threatened to kill herself that day with a torn towel around her neck; that several officers entered her cell to escort her out and to remove her clothing to prevent further harm; that Slayton refused orders to remove her clothing; that the officers, including Spells, then removed her clothing; and that Slayton resisted by kicking, swinging her arms, and punching a detention officer (*id*. at 3). Spells avers that she "never hit Slayton on her face or body or cut her clothes off with a knife" (*id*.).

Officer Spells submits the incident report regarding the events on June 10, 2023 (Dkt. 55-7), as well as 600 pages of Slayton's grievance records (Dkt. 55-3). She maintains that Slayton has filed six grievances against her, that three pertain to Slayton's allegations in this suit, that all three were denied. The three relevant grievances are as follows:

1. In Grievance No. 46047, Slayton alleged that Officer Spells strip-searched her

    without cause in front of male nurses, trustees, and inmates on June 10, 2022 (Dkt. 55-3, at 192-195). The grievance was investigated by Captain Bailey, who deemed it unfounded after investigation, noting that no video footage had been found to validate any of her allegations.

2. In Grievance No. 49346, filed in March 2023, Slayton again grieved the events of June 10, 2022, alleging that she had been illegally strip searched by Officer Spells after a non-contact attorney visit and that male inmates were present during the search (*id.* at 593-602). Deputy Small investigated the grievance, including interview of Slayton and Spells, and deemed it unfounded. Slayton's PREA complaint was deemed unsubstantiated.

3. In Grievance No. 50575, Slayton claimed that Officer Spells assaulted her and cut off her hair and clothes in June 2023 (*id.* at 316-48). Deputy Small investigated the complaint and interviewed Slayton, Spells, and others. She collected multiple statements and reviewed video footage. Staff advised Deputy Small that Slayton had attempted to hang herself before several officers entered her cell. After investigation, Deputy Small deemed the grievance unfounded and the PREA complaint unsubstantiated.

Officer Spells states that Slayton did not appeal any of the three grievances within five days of the determination, as required in the inmate handbook. *See* Dkt. 55-2, at 8 (Harris County Jail's inmate handbook requires an inmate to appeal any unfavorable determination on a grievance within five working days of the decision); *see generally* Dkt. 55-3 (grievance records); *see also* Dkt. 15, at 9-11 (Slayton states that she filed a grievance about the 2022 incident but did not appeal the denial of her grievance).

    **B.**    <u>Sergeant Roach</u>

    Slayton alleges that Sergeant Roach failed to adequately investigate her complaints, falsified a report when he determined that her grievance was unfounded, and bullied her (Dkt. 1, at 3; Dkt. 15, at 22-23).[3] She claims that Roach's actions caused her mental and

---

[3] Slayton's allegations against Sergeant Roach are related to his investigation of a grievance she filed against Officer Ryan Nguyen in November 2022 (*id.* at 21-23). The Court notes that

4 / 18

emotional harm, but no physical injury (*id.* at 18, 24). Sergeant Roach submitted an affidavit denying Slayton's allegations (Dkt. 54-4). He presents evidence that, despite Slayton's extensive grievance history, she never filed a grievance against him regarding the allegations in this lawsuit. *See generally* Dkt. 54-3.[4] However, he was assigned to, and investigated, many grievances filed by Slayton (Dkt. 54, at 3-4 (citing, *e.g.*, Grievance No. 47900 (Dkt. 54-3, at 60-61); Grievance No. 50165 (*id.* at 427-430); Grievance No. 48370 (*id.* at 522-525)).

### C.   Lieutenant Barnett

Slayton alleges that Lieutenant Barnett lost her grievance records, preventing her from obtaining relief, and "backed up" allegedly false reports in the grievance process (Dkt. 1, at 3; Dkt. 15, at 24-29).[5] She claims that Barnett caused her mental harm, exposure to more physical harm in the long run, and the risk of being charged with making false reports (*id.* at 25-27). Barnett submitted an affidavit denying Slayton's specific allegations (Dkt. 53-4).

Lieutenant Barnett presents evidence that, despite Slayton's extensive grievance history, she did not file a grievance against him regarding her claims in this suit.[6] Rather,

---

Slayton filed a separate case bringing her allegations against Nguyen. *See Slayton v. Nguyen*, Civil Action No. 22-4431 (S.D. Tex.).

[4]   In Grievance No. 47756, Slayton complained regarding Officer Nguyen (Dkt. 54-3, at 77-84). She did not complain about Roach in the grievance but, in making a request for more information dated November 14, 2022, stated that she had requested to speak to Sergeant Roach, among others, about her complaints (*id.* at 83).

[5]   This allegation, like Slayton's allegation against Sergeant Roach, pertains to her grievance against Officer Nguyen in 2022.

he investigated some of her grievances. His affidavit denies that he ignored or failed to investigate any grievance filed by Slayton to which he was assigned (Dkt. 53-4, at 2; *see*, *e.g.*, Dkt. 53-3, at 586-87 (Grievance No. 49488)).

### D.     Harris County

Slayton alleges that Harris County has customs that violate her rights, including customs regarding denying her rehabilitation, opening and stealing her mail, allowing male guards to walk around her while she is naked, and permitting physical assault against her without justification (Dkt. 15, at 29-31). She also alleges that the jail's handbook is out of date and that officials do not follow the handbook's instructions (*id*. at 31). She claims she has suffered mental harm including flashbacks and triggers; physical injury including head trauma, neck and back pain, and scarring; sexual harm including inmate rape and harassment by jail officials; and emotional harm including verbal harassment (*id*. at 31-34). She alleges that county officials were aware of a risk to her health and safety because she filed grievances (*id*. at 35-40).[7] She also alleges generally that county officials failed to follow their own grievance policy and retaliated against her for filing grievances, but provides no specific facts supporting her claims (Dkt. 62, at 5).

---

[6]     In Grievance No. 47756, which Slayton filed against Officer Nguyen, Slayton mentioned Barnett in the documentation, stating that he came to see her "being weird, rude, and obviously not trying to understand the gravity of the situations I explained but cover it up based off his dismissive defensive stance" (Dkt. 53-3, at 84). However, the grievance did not bring complaints about Barnett.

[7]     When asked by the Court to identify officials who were aware of the risk to her, Slayton listed Sergeant Roach, Lieutenant Barnett, and several other sergeants and lieutenants who are not parties to this suit (*id*. at 35). She alleges that Sergeant Roach and Lieutenant Barnett caused her harm during the grievance process (*id*. at 35-40).

Harris County argues that, although Slayton filed numerous grievances regarding medical care, mail tampering, assaults, food, and other issues, she did not exhaust the claims she brings in this suit against the county. The county also argues that Slayton's claims are baseless and unsupported by the evidence. They submit exhibits including grievance records, the incident report from June 10, 2023, and Slayton's medical records (Dkt. 60-3; Dkt. 60-9; Dkt. 61-1).

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment—Rule 56

The defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

    **B.**    ***Pro Se* Filings**

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual

allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

### III. ANALYSIS

Slayton brings her claims under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). The defendants seek summary judgment on several grounds, including exhaustion of administrative remedies.

#### A. Motion to amend or supplement pleadings

After the defendants filed their motions for summary judgment, Slayton filed a motion to amend or supplement her pleadings (Dkt. 62). The defendants are opposed,

arguing that Slayton's motion is untimely and that she pleads no reasonable basis for relief (Dkt. 64).

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course "no later than" 21 days after service of the pleading, a responsive pleading, or certain motions under Rule 12. For other amendments, a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). When considering a request for leave to amend, a district court "should consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (cleaned up). "Futility" in the context of a Rule 15 motion to amend means that the proposed amended complaint would fail to state a claim upon which relief could be granted. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

When a plaintiff seeks to supplement the pleadings and bring a claim based on events that happened "after the date of the pleading to be supplemented," the request is governed by Rule 15(d). *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012). Whereas Rule 15(a) provides that leave to amend should be "freely given," the text of Rule 15(d) contains no such provision. *Burns v. Exxon*, 158 F.3d 336, 343 (5th Cir. 1998). Nevertheless, "the discretion exercised in deciding whether to grant leave to amend is similar to that for leave to file a supplemental pleading." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983) (citing 6 C. Wright & A. Miller, FEDERAL PRACTICE AND

Procedure § 1504 (1971)); *see Lowrey v. Beach*, 708 F. App'x 194, 195 (5th Cir. 2018).

Slayton states, in her motion's opening sentence, that the motion is presented "in rebuttal of" the defendants' motions for summary judgment (Dkt. 62, at 1). She does not attach a complete, proposed amended complaint, as instructed in the Court's order dated February 22, 2023 (Dkt. 5, at 2) (warning that documents filed in violation of the directive could automatically be stricken from the record without further notice).

Slayton's motion to amend seeks correction of an unspecified clerical error in her SPN number at the Harris County Jail.[8] She also alleges that a jail official lied under oath about her laundry; that unnamed officials made no referral to mental health after she tried to harm herself; that unnamed officials did not provide medical treatment or take pictures after the June 10, 2023, incident; that she "was left naked for days after alleged self-mutilation/injury" and was not given a smock or suicide blanket when a male nurse came within view of her window; that a jail official made a false statement against her; and that officials denied her rehabilitation services on "multiple occasions" (Dkt. 62, at 1-2). Regarding her grievances, she alleges generally that all defendants lied and manipulated the facts, failed to follow their own policy, and retaliated against her on "numerous occasions" for filing grievances, but provides no specific facts (*id.* at 5; *see* Dkt. 66). None of these allegations states a viable claim against any defendant named in this suit.

Given the date of filing, Slayton's amendment is not permitted as a matter of course

---

[8] Slayton's SPN number on the Court's docket (SPN 03078865) matches the number on the jail's website. *See* Jail Information, Harris County Sheriff's Office, available at https://www.harriscountyso.org/jailinfo/FindSomeoneInJail (last visited Mar. 24, 2025).

under Rule 15(a)(1). Under Rule 15(a)(2) and Rule 15(d), the Court in its discretion determines that, to the extent Slayton pleads facts or claims not previously presented in her complaint or more definite statement, she fails to demonstrate that the amendment or supplement would state a claim upon which relief could be granted. *See Am. Int'l Refinery*, 676 F.3d at 466-67; *Burns*, 158 F.3d at 343; *Lowrey*, 708 F. App'x at 195. For this reason, and because Slayton failed to comply with the Court's instructions to submit a complete, proposed amended complaint, her motion will be **denied**. However, the Court construes the motion as a summary-judgment response and has carefully considered all facts in Slayton's motion, as well as the reply, when reaching the decisions in this opinion.

      **B.**      **Exhaustion of Administrative Remedies**

The defendants seek summary judgment on all of Slayton's claims based on her failure to exhaust available administrative remedies. They submit Slayton's grievance records, accompanied by a business-records affidavit on the final page (Dkt. 53-3; Dkt. 54-3; Dkt. 55-3; Dkt. 60-3).

Under the Prison Litigation Reform Act (PLRA), inmates bringing an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 578 U.S. 632 (2016); *Jones v. Bock*, 549 U.S. 199 (2007). TDCJ has a two-step formal grievance process, and an inmate must pursue a grievance through both steps for the claim to be considered exhausted. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. A prisoner must

exhaust administrative remedies before filing a federal complaint, and "[i]t is irrelevant whether exhaustion is achieved during the federal proceeding." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The exhaustion requirement is mandatory and strictly enforced. *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 789-90 (5th Cir. 2012), *as corrected* (Feb. 20, 2013); *Dillon*, 596 F.3d at 268. The PLRA does not allow a district court to make a "special circumstances" exception to the exhaustion provision, so as to permit a prisoner "to pursue litigation even when they have failed to exhaust available administrative remedies." *Ross*, 578 U.S. at 635; *see Gonzalez*, 702 F.3d at 788 ("District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint"). Rather, the only exception is "that statute's built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 578 U.S. at 635-36.

All three individual defendants have presented specific, supported arguments in support of their requests for dismissal on exhaustion grounds. First, Lieutenant Barnett argues that Slayton did not file any grievance against him regarding the claims in this lawsuit or any other issue, but mentioned him in Grievance No. 47756, stating that Barnett "came to see [her]" and was "weird," "rude," "defensive," and "not trying to understand the gravity of the situations" (Dkt. 53, at 10-11; Dkt. 53-3, at 83-84). Second, Sergeant Roach argues that Slayton did not file any grievance against him about her claims in this suit or any other issue, but that she also mentioned him in Grievance No. 47756, stating that she had asked to speak to Roach and other officials (Dkt. 54, at 10-11; Dkt. 54-3, at

83). Third, Officer Spells argues that Slayton filed three grievances against her that are relevant to this suit but that, after all three grievances were determined to be "unfounded," Slayton failed to appeal any of the denials within five days as required by jail policy (Dkt. 55, at 12 (citing Grievance No. 46047; Grievance No. 49346; and Grievance No. 50575)).

Although Slayton's responsive documents allege vaguely that unnamed officials violated policy and her rights in connection with unspecified grievances, she has not responded to the defendants' specific arguments (Dkt. 57; Dkt. 62; Dkt. 66).[9] She does not argue that the defendants' exhaustion records are incomplete. She thus does not demonstrate a genuine issue of fact regarding exhaustion. To the extent Slayton relies on a conclusory statement that her claims are exhausted, or that the grievance process was not available to her, the statement would be insufficient to avoid summary judgment. *See Jones*, 678 F.3d at 348 (conclusory statements and unsubstantiated assertions are insufficient); *Malacala*, 353 F.3d at 405 (evidence that a plaintiff does not refer to in responsive filings is not properly before the court, even if it exists in the record). Additionally, to the extent she bases her claims on the fact that her grievances were denied, her claim must fail. *See Geiger*, 404 F.3d at 374 (an inmate does not have a federally protected interest in having grievances resolved to his satisfaction).[10]

---

[9]   *See*, *e.g.*, Dkt. 62 at 5 (alleging generally, without specific facts, that jail officials misconstrue and manipulate the facts; that officials failed to follow their own policy; and that officials retaliated against her for exercising her right to grieve "on numerous occasions").

[10]   Before the defendants filed their summary judgment motions, Slayton filed multiple letters with the Court referring to administrative grievances. *See*, *e.g.*, Dkt. 18; Dkt. 21; Dkt. 23; Dkt. 30; Dkt. 42; Dkt. 51). She filed additional grievances after the defendants' motions were filed (Dkt.73),

Because the exhaustion requirement is mandatory, the Court will **grant** summary judgment to Barnett, Roach, and Spells on exhaustion grounds. However, given the county's cursory argument regarding exhaustion (Dkt. 60, at 18), the Court declines to grant summary judgment for Harris County on this basis.

### C. Claims against Harris County

Harris County urges summary judgment because Slayton has not adequately pleaded or shown municipal liability, among other grounds (Dkt. 60).

A municipality such as Harris County can be held liable for violating a person's constitutional rights under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A plaintiff bringing a claim against a municipality must show that (1) an official policy or custom (2) a policymaker who can be charged with actual or constructive knowledge (3) was the "moving force" behind the violation of the plaintiff's rights. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (discussing conditions claims and episodic-act claims under *Monell*). In some situations, a plaintiff can succeed without relying on a written policy "by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently" that the incidents "warrant[] the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees."

---

but the grievances all originated in June 2024, after the relevant dates for this suit. These letters are insufficient to defeat summary judgment as to whether Slayton exhausted the particular claims she brings in this suit.

*Martinez*, 71 F.4th at 389 (cleaned up).

Slayton's claim requires her to identify a policy, custom, pattern, or practice that was the moving force behind the alleged violations of her rights. In her more definite statement, she makes multiple broad allegations, as set out above. *See* Dkt. 15, at 29-31. The county's summary-judgment motion argues that these allegations fail to sufficiently identify a policy or custom and fail to name a county policymaker (Dkt. 60, at 22-24).

Because the county has presented a properly supported summary-judgment motion on Slayton's *Monell* claims, the burden shifts to Slayton to demonstrate a genuine issue of material fact. *See Hamilton*, 232 F.3d at 477. Slayton's responses do not address the issue directly and, in fact, argue that jail officials "failed to follow their own policy" (Dkt. 62, at 5). Although she alleges that various unnamed officials violated her rights, she provides no specific facts regarding a policy or custom and, moreover, does not identify a "pattern of examples" with sufficient "similarly and specificity." *Martinez*, 71 F.4th at 389-90 (cleaned up). Additionally, because she does not point to events other than those leading to her own alleged injuries, her filings are insufficient to demonstrate a genuine issue of material fact regarding a *de facto* policy. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018).

Moreover, even assuming that Slayton had identified a county policy or custom, she has not named or identified a policymaker for the county who promulgated or ratified the purported policy. *See Culbertson v. Lykos*, 790 F.3d 608, 624-25 (5th Cir. 2015). Rather, she only complains of multiple individual officers who allegedly violated her rights (Dkt. 15, at 35-40; *see* Dkt. 62; Dkt. 67). This allegation is insufficient to show that any official

16 / 18

she identifies had "final policymaking authority" as required. *See Culbertson*, 790 F.3d at 624.

Because Slayton does not direct the Court to evidence in the record supporting her *Monell* claim, summary judgment will be granted for Harris County. *See Outley*, 840 F.3d at 217 & n.9; *Malacala*, 353 F.3d at 405.

### D. Other Grounds for Summary Judgment

Because all of Slayton's claims have been dismissed, the Court need not address the defendants' additional arguments, including whether Slayton suffered sufficient injury, the merits of Slayton's constitutional claims, and qualified immunity.

### E. Default Judgment

Slayton has filed three motions for default judgment and argues that the defendants have no meritorious defense to her claims, among other arguments (Dkt. 74; Dkt. 76; Dkt. 78). All four defendants oppose the motions (Dkt. 75; Dkt. 79). Federal Rule of Civil Procedure 55(a) states that the Clerk must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Entry of default judgment is governed by Rule 55(b). Given that the four defendants have answered and moved for summary judgment, the plaintiff's motions are meritless under Rule 55 and will be **denied**.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** as follows:

1. Slayton's motion for leave to amend or supplement her pleadings (Dkt. 62) is **DENIED**.

2. Harris County's motion for leave to file excess pages (Dkt. 59) is **GRANTED**.

3. The motions for summary judgment filed by Barnett, Roach, and Spells (Dkt. 53; Dkt. 54; Dkt. 55) are **GRANTED**. Slayton's claims against these defendants are **DISMISSED without prejudice** for failure to exhaust administrative remedies.

4. Harris County's motion for summary judgment (Dkt. 60) is **GRANTED**. Slayton's claims against the county are **DISMISSED with prejudice**.

5. Slayton's motions for default judgment (Dkt. 74; Dkt. 76; Dkt. 78) are **DENIED**.

6. All other pending motions are **DENIED as moot**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on March 28, 2025.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE